**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-0008-WJM
Bankruptcy Case No. 13-27310-ABC

IN RE:

SAMUEL JESSE CHRISTIAN MORREALE,

Appellant,

v.

2011-SIP-1 CRE/CADC VENTURE, LLC, and
UNITED STATES TRUSTEE,

Appellees.

---

## ORDER AFFIRMING DECISION OF BANKRUPTCY COURT

---

Samuel Jesse Christian Morreale ("Morreale") appeals the final judgment of the Bankruptcy Court converting his Chapter 11 proceeding to a Chapter 7 proceeding. For the reasons stated below, the judgment of the Bankruptcy Court is affirmed.

## I. STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, the district court functions as an appellate court, reviewing the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. 28 U.S.C. § 158(a); *In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008). On mixed questions of law and fact, the Court reviews *de novo* any question that primarily involves the consideration of legal principles, and applies the clearly erroneous standard if the mixed question is primarily a factual inquiry. *In re Wes Dor, Inc.*, 996 F.2d 237, 241 (10th Cir. 1993).

## II. STATUTORY BACKGROUND

This appeal focuses on the Bankruptcy Court's decision to convert a Chapter 11 (reorganization) proceeding to a Chapter 7 (liquidation) proceeding. Before describing the facts of this case, a brief review of the relevant statute, 11 U.S.C. § 1112, is in order.

Section 1112 states that, "on request of a party in interest, and after notice and a hearing, the [bankruptcy] court shall convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). In this context, "for cause" can mean several things, including:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (B) gross mismanagement of the estate;
>
> * * *
>
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief . . . .

*Id*. § 1112(b)(4).

But, "if the [bankruptcy] court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," then the court should not convert the case so long as the debtor can establish various elements, including the ability to confirm a reorganization plan within a reasonable time and ability to cure whatever difficulties led to the potential for Chapter 7 conversion in the first place. *Id*. § 1112(b)(2).

Importantly, however, this "unusual circumstances" exception does not apply if the Bankruptcy Court finds cause to convert based on a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *Id*. § 1112(b)(2)(B), (b)(4)(A).

## III. FACTUAL BACKGROUND

Morreale is the sole member of Morreale Hotels, LLC. (ECF No. 23 at 8.)[1] Morreale Hotels took out certain loans, now owned by Appellee 2001-SIP-1 CRE/CADC Venture, LLC ("CRE"), and Morreale himself personally guaranteed those loans. (*Id*.; Record on Appeal ("R.") (ECF No. 21), Vol. VI at 133.)[2] Morreale Hotels became delinquent on those loans and filed for bankruptcy protection in 2012 to avoid foreclosure. (ECF No. 23 at 8; ECF No. 24 at 15–16.) CRE then obtained a judgment on Morreale's personal guaranties. (R., Vol. VI at 133.) In October 2013, Morreale filed his own Chapter 11 bankruptcy petition, admittedly to "hold [CRE] at bay pending the outcome of [his] efforts to reorganize Morreale Hotels." (ECF No. 23 at 8 (internal quotation marks omitted); R., Vol. I at 12–14.)

In July 2014, the United States Trustee ("Trustee") filed a 11 U.S.C. § 1112(b) motion to convert Morreale's Chapter 11 proceeding to a Chapter 7 proceeding ("Motion to Convert" or "Motion"). (R., Vol. II at 488.) As "cause" for conversion, the Trustee argued the three forms of cause quoted in Part II above: "(A) substantial or continuing

---

[1] All ECF citations are to the page number in the ECF header, which does not always match the document's internal pagination.

[2] Volume VI of the Record is filed under Restricted Access. To the extent it is quoted or summarized in this order, the Court has concluded that the quoted or summarized material does not meet the qualifications for Restricted Access under D.C.COLO.LCivR 7.2.

loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "(B) gross mismanagement of the estate," and "(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief." (*Id*. at 490, 502, 503.) CRE joined the Motion. (*Id*. at 557.)

The Bankruptcy Court held a four-day hearing on the Motion in December 2014. After hearing all of the evidence, the Bankruptcy Court concluded that no "gross mismanagement of the estate" was taking place and therefore refused to convert the case to Chapter 7 on that ground. (R., Vol. VI at 97–99.) But the Bankruptcy Court sustained the motion on the Trustee's other two grounds. (*Id*. at 99–103.)

Given this Court's analysis below of the parties' arguments on appeal, a summary of the evidence leading to the Bankruptcy Court's conclusion regarding failure to pay taxes is unnecessary. (*See* Part IV.D, *infra*.) Concerning "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," however, the relevant evidence was as follows.

Regarding losses to or diminution of the estate, the Bankruptcy Court received evidence and testimony that Morreale had incurred about $150,000 in attorneys' fees in the fourteen months since filing for bankruptcy protection. (R., Vol. VI at 197.) The Bankruptcy Court deemed these "substantial administrative expenses" sufficient to satisfy the "substantial or continuing loss to or diminution of the estate" element. (*Id*. at 102.)

Concerning likelihood of rehabilitation, the evidence and testimony focused on Morreale's proposed plan of reorganization ("Plan"). (R., Vol. III at 101.) The Plan established eight classes of creditors. (*Id*. at 107–08.) Of particular relevance is Class

4, entirely comprising CRE. (*Id*. at 107.) Morreale staked part of his ability to repay CRE on the Morreale Hotels reorganization plan. (*Id*. at 110–12.) The Bankruptcy Court had refused to confirm the Morreale Hotels plan, but that refusal was then (and remains) on appeal to this Court. *See In re Morreale Hotels, LLC*, Case No. 1:14-cv-01537-WJM (D. Colo., filed May 30, 2014).[3] Assuming eventual victory on appeal for Morreale Hotels, the Plan stated that CRE's secured and unsecured claims would be repaid in full through Morreale Hotels. (R., Vol. III at 110.) But if the Morreale Hotels appeal were to fail, the Plan created certain contingencies. Morreale would pay CRE's secured claim by "transfer[ring] his interest in [a certain rental property] to [CRE] by means of a deed in lieu of foreclosure." (*Id*. at 111.) As for CRE's unsecured claim, Morreale noted that it would be paid at least in part through CRE's foreclosure on the Morreale Hotels properties securing the loan at issue, and any deficiency would be paid "from liquidation of the Appeal Bond." (*Id*. at 112.)

The attorney who drafted the Plan, Jeffrey Weinman, testified on Morreale's behalf at the hearing on the Motion to Convert. (R., Vol. VI at 433–34.) A significant portion of his testimony was prompted by a Plan provision stating that Morreale "will sell, refinance, or liquidate his non-Exempt Assets as provided for in this Plan to pay his creditors with allowed claims as set forth in this Plan." (R., Vol. III at 113–14.) Weinman pointed this out as one of the "features" of the Plan, but opined that it was "vastly different" from liquidation under Chapter 7 because Chapter 11 proceedings

---

[3] The Morreale Hotels appeal is currently stayed pending a Bankruptcy Court hearing to determine whether the Trustee may liquidate Morreale Hotels' assets, which would moot the appeal. (*See* 14-cv-1537, ECF No. 28.)

permit much more freedom of negotiation regarding the value of various assets. (R., Vol. VI at 477–78.) Nonetheless, Weinman confirmed that the Plan was a "[c]omplete liquidation" plan, and that the Plan was in fact "not reliant for its viability upon confirmation of the [Morreale] Hotels plan" because that liquidation could, and to some extent would, take place regardless of success in the Morreale Hotels appeal. (*Id*. at 482–85.)

Based on the foregoing, the Bankruptcy Court concluded that "there is no likelihood of rehabilitation. The [Plan] does not propose or purport to rehabilitate. It proposes complete liquidation." (R., Vol. VI at 102.) The Bankruptcy Court therefore ordered conversion to Chapter 7. (*Id*. at 103.)

## IV. ANALYSIS

As already noted, the provision under which the Bankruptcy Court converted Morreale's case to Chapter 7 has two elements: "substantial or continuing loss to or diminution of the estate *and* the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4) (emphasis added). "[B]ecause the statute is written in the conjunctive, both requirements must be satisfied." *In re Miller*, 496 B.R. 469, 479 (Bankr. E.D. Tenn. 2013). The Court will address each in turn.

### A. "Substantial or Continuing Loss to or Diminution of the Estate"

Morreale claims the Bankruptcy Court erred by relying on the attorneys' fees he had incurred to find continuing loss to or diminution of the bankruptcy estate. (ECF No. 23 at 18–21.) Morreale emphasizes that, at least at the time of the Motion to Convert hearing in December 2014, the Bankruptcy Court had not approved any payments to

Morreale's attorneys, and that the Trustee was in fact objecting to the amounts those attorneys were seeking. (ECF No. 23 at 11–12, 19–20.)[4] Thus, Morreale argues, his bankruptcy estate had actually sustained no loss due to attorneys' fees. (*Id*. at 20–21.)

In support, Morreale cites *In re Gabriel Technologies Corp.*, 2013 WL 2318581 (Bankr. N.D. Cal. May 28, 2013), where the court reasoned that "accrual of liabilities are not the same as the incurring of actual out-of-pocket losses, such as the dissipation of assets that diminishes the estate." *Id*. at *3. The court accordingly refused to find loss to or diminution of the estate based on "accrual of fees of professionals employed by the Debtors." *Id*. at *2–3.

The Trustee responds by citing to various other cases in which accruing professional fees were deemed losses to or diminution of the estate. (ECF No. 24 at 35–36.) For example, *In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007), specifically noted the large amount of professional fees claimed in yet-to-be-approved applications. *Id*. at 564. That, among other factors, prompted the court to conclude that "there is a substantial and continuing diminution of the estate." *Id*. Other cases likewise found such diminution through mounting professional fees, although these cases do not directly address whether those fees remained subject to court approval. *See In re Sterling Bluff Investors, LLC*, 515 B.R. 902, 919–20 (Bankr. S.D. Ga. 2014); *In re Brutsche*, 476 B.R. 298, 305 (Bankr. D.N.M. 2012); *In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009); *In re Plymouth Oil Co., L.L.C.*, 2014 WL 3812078, at *3 (Bankr. N.D. Iowa Aug. 1, 2014).

---

[4] This Court has not been informed whether any fee applications have since been approved.

Morreale attempts to distinguish these cases by noting that all of them rely on "at least one other reason, coupled with accruing professional fees, in finding a substantial or continuing loss [to] or diminution [of] the estate." (ECF No. 26 at 4–5.) Morreale believes it was error for the bankruptcy court to rely "solely . . . upon accrued but unpaid attorneys' fees." (*Id*. at 6.)

Although Morreale is correct that none of the Trustee's cited cases rest their holdings exclusively on accruing professional fees, the Court is not convinced that looking only to accruing professional fees is error. "To determine the existence of a continuing loss to, or diminution of, the estate, the bankruptcy court must look beyond financial statements and fully evaluate the present condition of a debtor's estate." *In re Hassen Imports P'ship*, 2013 WL 4428508, at *13 (B.A.P. 9th Cir. Aug. 19, 2013). Fully evaluating the present condition of a bankruptcy estate surely involves looking at accruing liabilities, even if the exact amount of those liabilities has yet to be determined. The Court sees no relevance to the fact that the Bankruptcy Court here only looked at one significant accruing liability (attorneys' fees).

Moreover, whether there exists a continuing loss to or diminution of the bankruptcy estate is a factual finding this Court reviews only for clear error. *Id*. at *14. Clear error means that "[a] finding of fact is . . . without factual support in the record or . . . after reviewing all of the evidence, [the reviewing court is] left with the definite and firm conviction that a mistake has been made." *In re Vaughn*, 765 F.3d 1174, 1180 (10th Cir. 2014). Here, the facts before the bankruptcy court showed an attorneys' fees bill of about $150,000 for roughly fourteen months of proceedings in what the

Bankruptcy Court described as "a non-operating Chapter 11," *i.e.*, a case where Morreale had done barely anything to move the process along, but was instead using it solely to forestall CRE's claim on his personal guaranty while hopefully arranging for Morreale Hotels to pay the liability that would otherwise fall under that guaranty. (R., Vol. VI at 97–98, 102.) The Bankruptcy Court was at least entitled to consider the fees and the surrounding circumstances as part of its analysis, and this Court is not left with "the definite and firm conviction that a mistake has been made" in relying on that evidence to find loss to or diminution of the estate. *In re Vaughn*, 765 F.3d at 1180. Accordingly, the Bankruptcy Court's finding in this regard is affirmed.

**B. "Absence of a Reasonable Likelihood of Rehabilitation"**

Regarding likelihood of rehabilitation, the Bankruptcy Court noted that Morreale's Plan was a liquidating plan, not a rehabilitation plan, and therefore no reasonable likelihood of rehabilitation existed. (R., Vol. VI at 102.) The Bankruptcy Court's conclusion is consistent with a number of cases on this issue. *See Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004) (holding, and citing cases standing for the proposition, that rehabilitation plans may not be based on liquidation).

Morreale's challenge to the Bankruptcy Court's holding is somewhat convoluted. He says that "a careful reading of the Plan . . . evidences that it was not a liquidating Plan," or at least that it was "much more than a simple liquidating plan." (ECF No. 23 at 22 & n.50.) Moreover, Morreale quotes the liquidation portion of the Plan—"Following confirmation of the Plan, [Morreale] will sell, refinance, or liquidate his non-Exempt Assets as provided for in this Plan to pay his creditors with allowed claims as set forth in

this Plan." (R., Vol. III at 113–14)—and insists that the words "as provided for in this Plan" and "as set forth in this Plan" were "intended to explain that [Morreale] would liquidate non-Exempt assets to pay claims if, and only if, [Morreale Hotels'] Appeal was unsuccessful and only to the extent that creditors remained unpaid after liquidation of [Morreale Hotels'] property." (ECF No. 23 at 24.) Morreale states that "these nuances would have come to light" if "the bankruptcy court [had] allowed the plan conferral process to mature." (*Id.*)

This argument fails for several reasons. First, Morreale does not argue that the Bankruptcy Court misunderstood the Plan *as written*—and as written, the Plan obviously calls for liquidation. Thus, the Bankruptcy Court would likely have been committing error as a matter of law to find that the plan allows for rehabilitation. *See Loop Corp.*, 379 F.3d at 516. Yet that is the only finding that would have "allowed the plan conferral process to mature," thus permitting "nuances" to emerge showing that this was not a liquidation plan. In other words, the Bankruptcy Court would have to erroneously conclude that the Plan, as written, was not really a liquidation plan so that the Bankruptcy Court could later learn that the Plan, as nuanced by Morreale's supposed intentions, was not really a liquidation plan. The absurdity is evident.

Moreover, the great weight of evidence in the record points away from the nuances that Morreale now tries to bring out. Out of eight creditor classes, only Class 7 says anything about paying through Morreale Hotels first and then through Morreale's personal liquidation second. (R., Vol. III at 113–14, §§ 4.6–4.8.) And if the words of the Plan (or their absence) were not sufficiently clear, testimony about the Plan from Weinman, Morreale's attorney, left no ambiguity. Weinman testified that the Plan was a

"[c]omplete liquidation" plan and "not reliant for its viability upon confirmation of the [Morreale] Hotels plan" because at least some liquidation would take place regardless of success in the Morreale Hotels appeal. (R., Vol. VI at 482–85.)[5]

Here, however, Morreale claims that Weinman was poised "to further explain the unique features of the proposed Plan"—supposedly including the "nuance" regarding its liquidation provisions—"but [the] Bankruptcy Court sustained the [Trustee's] objection thereby precluding such explanation." (ECF No. 26 at 9–10.) Morreale has not appealed that evidentiary ruling and otherwise grossly misstates the record.

The Trustee objected when Weinman began to offer his opinion regarding the eventual confirmability of the Plan. (R., Vol. VI at 474–75.) Specifically, the Trustee objected that Weinman could not offer that opinion because he had not been disclosed as an expert witness. (*Id*. at 475.) The Bankruptcy Court sustained *that* objection. (*Id.*) There was *no* objection, however, when the examining attorney (another of Morreale's attorneys) asked, "Mr. Weinman, would you describe the features of this plan?" (*Id*. at 477.) Weinman then went on to summarize various aspects of the Plan, including that it "provide[s] for the liquidation of all of [Morreale's] nonexempt assets to be distributed pro rata according to the classes and in particular in payment of unsecured creditors since secured creditors will be paid pursuant to their rights they hold relative to their collateral." (*Id*.) Weinman elsewhere explained that the Plan "liquidates all of the

---

[5] Weinman does not say so explicitly, but he was presumably referring at least to creditor Classes 1 and 2 (relating to outstanding tax bills). (*See* R., Vol. III at 108–09.) Morreale's personal liquidation proceeds were specifically earmarked to pay these Classes. (*Id*. at 105, § 1.29.) Although Morreale was disputing the Class 1 and 2 claims, he nonetheless proposed to set aside the cash needed to pay them in full pending resolution of those disputes. (*Id*. at 108–09.)

assets of the estate for the benefit of creditors and that's what—that's what most liquidating plans do. Some [plans] are really partial liquidations and this is a complete liquidation." (*Id*. at 481.) Weinman nowhere stated that liquidation was contingent on the Morreale Hotels appeal. Accordingly, nothing in the record supports Morreale's contention that Weinman would have made everything clear but for the Bankruptcy Court sustaining the Trustee's evidentiary objection.[6]

Given all this, the Bankruptcy Court did not clearly err in finding no likelihood of rehabilitation. Even if a "careful reading" of the Plan (ECF No. 23 at 22 n.50) yields a meaning nearer to what Morreale now asserts, the evidence actually before the Bankruptcy Court fully supported its conclusion that the Plan was a liquidation plan and therefore not an appropriate rehabilitation plan. The Bankruptcy Court's finding is affirmed.

---

[6] This is not the only instance where Morreale's appeal briefs mischaracterize the record or cited authority. For example, Morreale elsewhere states that the Plan "contemplated the *possibility* of liquidation *as a last resort* in the event that [Morreale Hotels'] Appeal was unsuccessful and creditors remained unpaid after liquidation of the Hotels' property," citing "Record Volume III, pp. 110–112, § 4.8," which is a portion of the Plan. (ECF No. 26 at 8 & n.5 (emphasis in original).) The cited passages do not generally reflect this "last resort" characterization, and Morreale can offer only one specific supporting example, *i.e.*, that Class 7 creditors would be repaid through his personal liquidation to the extent Morreale Hotels could not cover it. (*Id*. at 8–9.) Morreale says nothing about, *e.g.*, Classes 1 and 2, for which liquidation proceeds were earmarked, *see* note 5 *supra*, except to say that those Classes would be paid from "cash reserved." (ECF No. 23 at 22.) But again, the "cash reserved," or at least the ultimate cash to pay any allowed claim, was to come from liquidation. *See* note 5 *supra*. In addition, Morreale cites *In re Miller*, 496 B.R. at 479, in support of the notion that incurring but not yet paying attorneys' fees does not count as a loss to the bankruptcy estate. (ECF No. 23 at 20.) The cited portion of *Miller*, however, discusses the accruing fees of a *creditor*, not a debtor. Morreale's counsel cannot be unaware of the grievous injury their credibility suffers before this Court when they mischaracterize the record and provide inaccurate citations in this manner.

**C. Failure to File Taxes**

As noted previously, the Bankruptcy Court also determined that conversion to Chapter 7 was appropriate based on Morreale's failure to file tax returns. (R., Vol. VI at 99–102.) This basis for conversion is subject to 11 U.S.C. § 1112(b)(2)'s "unusual circumstances" exception. Morreale argues that unusual circumstances existed in his case. (ECF No. 23 at 25–30.) But Morreale also acknowledges that the unusual circumstances exception does not apply to a finding that conversion is appropriate based on "substantial or continuing loss to or diminution of the estate the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(2)(B), (b)(4)(A). (*See* ECF No. 26 at 11.) Because the Court has affirmed that finding, the Court need not and does not reach Morreale's arguments regarding the unusual circumstances exception.

## V. CONCLUSION

For the reasons set forth above, the judgment of the Bankruptcy Court is AFFIRMED.

Dated this 1st day of June, 2015.

BY THE COURT:

William J. Martínez
United States District Judge